### 21520

**William J. MEDLIN, Appellant, v. STATE of South Carolina, Respondent.**

(280 S. E. (2d) 648)

*Randall M. Chastain,* Columbia, *for appellant.*

*Asst. Atty. Gen. Donald J. Zelenka,* Columbia, *for respondent.*

July 20, 1981.

NESS, Justice:

This is a post-conviction appeal. The trial court denied the application. We affirm on the basis of my views in *Harden v.*

*State of South Carolina,* S. C., 277 S. E. (2d) 692 (1981), concurred in by Lewis, C. J., that a trial judge may participate in the plea bargaining process if he follows guidelines to minimize the fear of coercion.

The guidelines as enunciated in *Harden v. State, supra* are as follows:

"Standard 14-3.3. Responsibilities of the judge

(a) The judge should not accept a plea of guilty or *nolo contendere* without first inquiring whether the parties have arrived at a plea agreement and, if there is one, requiring that its terms, conditions, and reasons be disclosed.

(b) If a plea agreement has been reached by the parties which contemplates the granting of a charge or sentence concessions by the judge, the judge should:

(i) order the preparation of a preplea or presentence report, when needed for determining the appropriate disposition;

(ii) give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence concessions; and

(iii) in every case advise the defendant whether the judge accepts or rejects the contemplated charge or sentence concessions or whether a decision on acceptance will be deferred until after the plea is entered and/or a preplea or presentence report is received.

(c) When the parties are unable to reach a plea agreement, if the defendant's counsel and prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may

thereupon decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court.

(d) Whenever the judge is presented with a plea agreement or consents to a conference in order to listen to the parties concerning charge or sentence concessions, the court may require or allow any person, including the defendant, the alleged victim, and others, to appear or to testify.

(e) Where the parties have neither advised the judge of a plea agreement nor requested to meet for plea discussion purposes, the judge may inquire of the parties whether disposition without trial has been explored and may allow an adjournment to enable plea discussions to occur.

(f) All discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved, except that for good cause the judge may order the transcript of proceedings to be sealed. Such discussions should be held in open court unless good cause is present for the proceedings to be held in chambers. Except as otherwise provided in this standard, the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered.

(g) In cases where a defendant offers to plead guilty and the judge decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, the judge shall so advise the defendant and permit withdrawal of the tender of the plea. In cases where a defendant pleads guilty pursuant to a plea agreement and the court, following entry of the plea, decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea shall be allowed if:

(i) prior to the entry of the plea the judge concurs, whether tentatively or fully, in the proposed change or sentence concessions; or

(ii) the guilty plea is entered upon the express condition, approved by the judge, that the plea can be withdrawn if the charge or sentence concessions are subsequently rejected by the court.

In all other cases where a defendant pleads guilty pursuant to a plea agreement and the judge decides that the final disposition should not include the contemplated charge or sentence concessions, withdrawal of the plea may be permitted in the discretion of the judge."

Appellant plead guilty to three indictments for violation of Section 16-11-540 and Section 16-11-120, Code of Laws of South Carolina (1976), and was sentenced to concurrent terms of confinement.

Here, it is conceded that the trial judge participated in the plea negotiations. As in *Harden, supra,* we have reviewed the entire record and conclude the appellant could not have reasonably felt coerced by the participation of the trial judge in the negotiations of his guilty plea.

All other issues raised are without merit and are dismissed under Rule 23 of the Rules of Practice of this Court.

Affirmed.

LEWIS, C. J., and HARWELL, J., concur.

LITTLEJOHN and GREGORY, JJ., concur and dissent.

LITTLEJOHN AND GREGORY, Justices (concurring and dissenting):

We concur in the result of the majority opinion. We dissent from that part of the opinion which in effect adopts a rule of procedure permitting a trial judge to participate along with state's counsel, defense counsel, and the defendant in the plea-bargaining process.

The impact of today's ruling is not fully appreciated without reading in connection with it the opinion in the case of *Harden v. State of South Carolina,* S. C., 277 S. E. (2d)

692 (1981). In *Harden* only four members of the court participated. Two would have brought into being that which is accomplished today, but inasmuch as we dissented, the opinion had no impact as to this rule. Now that five members of the court are participating and three have agreed with the view today expressed, the three majority opinion adopts a rule of procedure and becomes law in this state.

We dissent for two basic reasons:

## I.

The effect of today's opinion is to overrule our two cases of *State v. Cross,* 270 S. C. 44, 240 S. E. (2d) 514 (1977), and *Beaver v. State of South Carolina,* 271 S. C. 381, 247 S. E. (2d) 448 (1978), which forbade the judge to participate in plea bargaining. There has been no application to this court, as permitted by our rules, to attack, modify, or overrule our opinions in these two cases. *Cross and Beaver* followed the generally accepted law and the Minimum Standards for Criminal Justice for the American Bar Association as of the time of the opinions. A new rule as far-reaching as that promulgated today should take place only after input from the Attorney General and interested members of the bench and bar. So far as we are aware, no other state and no other jurisdiction has adopted the ABA Standards as a rule of court.

## II.

Independent of the fact that there is no reason to deal with this question in this case, the rule itself is inherently bad and in our view should not be promulgated. The fact that these standards have been sanctioned by the ABA is of no real consequence. They are in effect the thinking of the Criminal Justice Section of the ABA, whose members are basically engaged in the practice of criminal law and who understandably seek a rule favorable to those people indicted for crime. The standards are not necessarily the thinking of the members of the American Bar Association, or even of its Board of Governors or House of Delegates.

The rule adopted today is completely inconsistent not only with our case law but also with the Federal Rule as set forth in 18 U. S. C. A. p. 15, rule 11, which states, in regard to plea agreement procedure: "The court shall not participate in any such discussions."

We are still of the view that it is improper for a trial judge to initiate or participate in plea-bargain negotiations. Plea bargaining cannot be justified in theory; we tolerate it because of the practical need to expedite the work of the court. Plea bargaining has tended, in a measure too large, to shift from the office of the judge to the office of the prosecuting attorney the determination of sentences. It is true that the judge, at least in theory, reserves to himself the right to honor or reject any plea bargain; however, as a practical matter, he accepts the sentence and disposition recommended by the office of the prosecutor in a great majority of the cases in order to expedite their disposition.

It is difficult to envision the full impact of the new rule. We predict that it will require the judge to testify in more post-conviction relief actions, which are already legion. The rule gives to an accused person and to his attorney one more weapon in pursuit of leniency. Under the rule the judge will not be called upon to participate in the plea bargaining until and unless the defendant seeks more leniency than that to which the prosecutor is willing to agree. While the prosecutor is not required to request a meeting ". . . with the judge in order to discuss a plea agreement," he will be tempted, in an effort to expedite the work of his court, to grant defense counsel's request to ask the judge to moderate a meeting. While the judge does not have to agree to meet with the parties, he will be greatly inclined to participate in order to clear the docket.

The meeting may be held ". . . in open court . . ." In that event the discussion will normally be in the presence of the jury and in the presence of the news media. If the open-court conference does not bear fruit, it will be improper to

conduct a trial in that term of court because the jury will have heard the defendant tendering a guilty plea and attempting to negotiate with the judge.

When the conference is held in open court, there is no problem relative to the presence of the defendant and the news media. When the court is recessed in order that the judge may moderate the conference in chambers, it is inescapable that the defendant and the news media are entitled to be present. This brings about a roundtable discussion in the judge's private office. If the judge is to exercise a reasoned judgment, he must be told in the presence of the defendant some of the facts. Once the judge has been told of the facts by the defendant or by his counsel speaking in his presence, it will become improper for that judge to try the case. Certainly, no judge should be expected to go through the motions of conducting a fair trial of a defendant who has already told the judge that he is guilty.

In our view, this rule will encourage judge shopping and will increase the already obnoxious disparity in sentences.

Plea bargaining can be tolerated when limited to participation by adversaries. The solicitor is the adversary of the defendant. The judge is never an adversary. He must remain neutral. It will become difficult, if not impossible, for a judge to remain impartial after a defendant has admitted his guilt in chambers and perjured himself in open court by claiming he is innocent. Federal Rule 11 and the rulings of this court, as indicated in *Cross* and *Beaver,* recognize that participation in the plea-bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and effective administration of criminal justice.

The presence of the judge at a plea-bargaining conference, in its very nature, is inherently coercive. In every such conference there is an implicit promise-threat. A defendant dare not refuse the "counter-offer" of the judge, for fear of ending up with a more harsh sentence. A negotiation between a

judge and a defendant, however free from any calculated purpose to induce a plea, has no place in a system of justice. It impairs the judge's objectivity in passing upon the voluntariness of the plea when offered. In *United States v. Gilligan*, 256 F. Supp. 244 (1966), the court dealt with a kindred though different problem. The observations of the court are equally applicable here:

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence. A guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act. The plea is so interlaced with the promise that the one cannot be separated from the other; remove the promise and the basis for the plea falls.

A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. The judge stands as the symbol of even handed justice, and none can seriously question that if this central figure in the administration of justice promises an accused that upon a plea of guilty a fixed sentence will follow, his commitment has an all-pervasive and compelling influence in inducing the accused to yield his right to trial. A plea

entered upon a bargain agreement between a judge and an accused cannot be squared with due process requirements of the Fourteenth Amendment."

There is one additional reason the rule should not be adopted. It weakens the bargaining potential of the prosecutor. Use of the rule makes less potent his power to force the issue and bring the case to an end either by trial or by a guilty plea. No defendant will ever ask for a conference with the judge because the solicitor demands too little; the request will always be because the solicitor demands too much. If the judge refuses to agree to less, the defendant can always revert to the solicitor's original offer. In an effort to clear the docket, the solicitor will normally be forced to agree.

We can only hope that the more astute judges will refuse to participate; is to be hoped that the less astute judges will not "give away the courthouse for the sake of clearing the docket."

We concur in result; otherwise we dissent.